THE HONORABLE JAMES L. ROBART

UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

RAYMOND LEE FRYBERG,

        Defendant

Case No.: CR15-00109JLR

DEFENDANT'S SENTENCING
MEMORANDUM

The defendant, Raymond Lee Fryberg, by and through his attorneys, John Henry Browne and Michael T. Lee, respectfully submits the following Sentencing Memorandum for the Court's consideration in imposing a fair and appropriate sentence. Mr. Fryberg respectfully requests this Court impose a sentence that is below or "in variance" with the advisory guidelines range. As discussed in greater detail below, Mr. Fryberg submits that his personal history and circumstances of this offense warrant a sentence of two years' probation with no term of imprisonment as certainly sufficient but not greater than necessary to achieve the goals of sentencing under 18 U.S.C. 3553(a).  Sentencing is scheduled for January 11, 2015, at 9:00 AM before this Honorable Court.

DEFENDANT'S SENTENCING MEMORANDUM - 1

LAW OFFICES OF JOHN HENRY BROWNE PS
108 SOUTH WASHINGTON STREET, SUITE 200
SEATTLE, WASHINGTON 98104
PHONE: (206) 388-0777 FAX: (206) 388-0780

## I.    **INTRODUCTION**

At the heart of this case lies Raymond Lee Fryberg, a grieving father whose world shattered beyond any hope of repair on October 24, 2014. For a brief, stoic moment in life, Mr. Fryberg truly believed his circumstances could get no worse. His son was gone, his family forever broken. He had lost everything but his sobriety and a single droplet of faith that somehow remained deep in his soul. But as the dust began to settle and the Fryberg's slowly came to terms with what had happened, the Federal Government pounded on their door. Mr. Fryberg's arrest and subsequent prosecution "*changed everything*."

This Court, having presided over all pertinent stages of litigation including the jury trial itself, is familiar with the facts and procedural posture of the case. To briefly summarize, the Government charged Mr. Fryberg by way of Superseding Indictment with six counts of Unlawful Possession of a Firearm by a Prohibited Person, in violation of Title 18, United States Code, Section 922(g)(8). (Dkt. 29). The case became political and Mr. Fryberg found himself the center of local, national, and even worldwide media attention. The attention was extraordinarily intense because the case never was viewed as a common firearm prosecution. Rather, the case became synonymous with the national epidemic of firearms used to facilitate mass killings. As a consequence, Mr. Fryberg became the poster child for what many believe are legislative deficiencies in the current system for firearm background checks.

Mr. Fryberg filed a Motion to Change Venue, seeking a trial in a community that had not be polarized by irrelevant, often fictional pretrial publicity or otherwise torn apart by the underlying circumstances of this case. (Dkt. 43).  This Court denied Mr. Fryberg's request and the case proceeded to trial in the Western District of Washington where a jury convicted Mr. Fryberg on all six counts. Despite being alienated from his community and painted by the media as a monster, Mr. Fryberg carried himself with remarkable dignity and displayed a tremendous amount of respect for this Court and the legal process. He appeared on time for every court hearing and maintained strict compliance with his obligations under Pretrial Services. ***Exhibit A***. At trial Mr. Fryberg invoked his right not testify; he fully intends to exercise his allocution rights at sentencing.

LAW OFFICES OF JOHN HENRY BROWNE PS
108 SOUTH WASHINGTON STREET, SUITE 200
SEATTLE, WASHINGTON 98104
PHONE: (206) 388-0777 FAX: (206) 388-0780

## II.   ADVISORY GUIDELINE CALCULATIONS

U.S. Probation calculated a total Offense Level of 18. PSR ¶ 32. Mr. Fryberg was convicted by a jury of six counts of Unlawful Possession of a Firearm by a Prohibited Person in violation of 18 USC § 922(g)(8). The base offense level, as calculated by USSG §2K2.1(a)(6), is 14. PSR ¶ 24.  The jury also determined Mr. Fryberg possessed 11 firearms, which increased his base offense level by 4 points under USSG §2K2.1(b)(1)(B) for offenses involving between 8 and 24 firearms. PSR ¶ 25. Mr. Fryberg has zero criminal history points, therefore, is in Criminal History Category I. PSR ¶ 35. As such, Mr. Fryberg's advisory sentencing range is 27-33 months. PSR ¶ 64. However, given the extraordinary circumstances and downward departures as discussed herein, the Court should grant a "variance" based on 18 U.S.C. § 3553(a), because the advisory guideline provision of 27 to 33 months is unreasonable on this set of facts.

## III.   DEFENDANT'S SENTENCING RECOMMENDATION

The present case falls outside the heartland of cases involving convictions under 18 U.S.C. §922(g)(8). The Defense recommends a sentence of two years' probation. Should the Court require some form of custody, the Defense respectfully recommends a term no greater than three months of community custody as a condition of probation. Given the facts and extraordinary circumstances of this particular case, such a sentence is  clearly sufficient but not greater than necessary to accomplish the goals of sentencing under 18 U.S.C.§ 3553(a).

## IV.   THE FEDERAL SENTENCING STATUTE

The Court must still consider the sentencing guidelines, but under U.S. v. Booker, the Guidelines are "merely one sentencing factor among many, and the calculated guideline range must be considered in conjunction with the other § 3553(a) factors." 543 U.S. 220 (2005).  The guidelines do not have quasi-mandatory status. Thus, in wake of Booker, it is essential that district courts make an "individualized assessment based on the facts presented." Gall v. United States, 552 U.S. 38, 50 (2007). The Supreme Court further emphasized that the District Court "is in a superior position to find facts and judge their importance under § 3553(a) in the individual

DEFENDANT'S SENTENCING MEMORANDUM - 3

case…This means that "[t]he sentencing judge has access to, and greater familiarity with the individual case and the individual defendant before him than the [Sentencing] Commission or the appeals court." Id., quoting Rita v. United States, 551 U.S. 338, 357-58 (2007).

The federal sentencing statute requires a "sentence sufficient, but not greater than necessary" to meet certain goals, including consideration of "(1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available … (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." 18 U.S.C § 3553(a).

## V.   APPLICATION OF § 3553(a) FACTORS

### 1.   The History and Characteristics of Raymond Lee Fryberg

Raymond Lee Fryberg is an extremely humble man who has experienced far more in life than he had ever wanted or deserved. He is 42 years old, a loving husband of 20 years and father to three surviving children. Mr. Fryberg has been sober for the more than a decade, and made that important life decision because he wanted to instill positive, healthy values onto his children. He is a member of the Tulalip Indian Tribe and has lived on tribal lands for almost his entire life. From 2004 until 2011, Mr. Fryberg was responsible for managing the tribe's smokehouse. His duties included: maintaining the communal dwelling stocked with firewood; providing meat from hunting for ceremonial gatherings; and hunting and collecting firewood for tribal elders. From 2011 until his arrest, Mr. Fryberg worked for the tribe as a building code enforcement officer. The tribe terminated his employment after he was Indicted in this case. As such, Mr. Fryberg no longer had insurance to get professional mental health counseling.

DEFENDANT'S SENTENCING MEMORANDUM - 4

LAW OFFICES OF JOHN HENRY BROWNE PS
108 SOUTH WASHINGTON STREET, SUITE 200
SEATTLE, WASHINGTON 98104
PHONE: (206) 388-0777 FAX: (206) 388-0780

As discussed in an overwhelming number of letters submitted on his behalf, Mr. Fryberg is a peaceful man who always put his family first. He gathered his family in the wake of unimaginable tragedy and did everything within his power to avoid despair and comfort his young children who struggled to understand what was happening. As noted in the Presentence Report, Mr. Fryberg moved his family into his parents' home because they "needed to check on each other and be with each other." PSR ¶ 46. Letters submitted on Mr. Fryberg's behalf are attached hereto as *Exhibit B*. Photos of Mr. Fryberg and his family are attached as *Exhibit C*. Common adjectives used throughout these letters to describe Mr. Fryberg are: caring, honest, respectful, and a good father who cared deeply for not only his own children but for everyone he came into contact with. Defense counsel would like to echo these terms as representative of Mr. Fryberg's true character. Moreover, as mentioned in the numerous character letters, Mr. Fryberg has also volunteered a tremendous amount of his free time to helping coach youth wrestling and football. On and off the field, Mr. Fryberg was highly respected in his community. He is a man of principle, dedicated to fostering meaningful relationships and positive values. At the end of the day, Mr. Fryberg rests his head at night as a simple man who wants nothing more than to be with his family. In turn, his family desperately needs him.

## 2. The Nature and Circumstances of the Offense

In its Sentencing Memorandum, the Government went to great lengths to characterize Mr. Fryberg as a morally devoid monster with a violent temper. The Government asserted Mr. Fryberg has a "history of violence towards women," which could not be further from the truth. To be sure, the only allegation of domestic violence came from Mr. Fryberg's ex-girlfriend, Jamie Gobin.  Never has there been an allegation of abuse or violence asserted by any other person. The Government elected not to call Ms. Gobin as a witness during trial, likely because she enjoys no credibility and would have been a liability to its case.

While a jury found Mr. Fryberg subject to a Permanent Protection Order issued by the tribal court on September 10, 2002, several facts not in evidence at trial should be considered by this Court. After the tribal court entered the Permanent Protection Order, Ms. Gobin, filed two

DEFENDANT'S SENTENCING MEMORANDUM - 5

subsequent motions supported by affidavits to dismiss the restraining order. In her motions and supporting affidavits, Ms. Gobin admitted she falsified the original petition for a protection order, asking the tribal court to "drop restraining order cause all allegations were false." She further stated, "All statements were not true. [Raymond Fryberg] never put his hands on me." "My mother and father talked me into getting the restraining order. I never wanted to lie to get it."

Likewise, given the Government raised the issue, this Court should consider the factual basis for Mr. Fryberg pleading "no contest" to violating the tribal court protection order. On the date of the allegation, Mr. Fryberg's son, A.G., was stranded at the Boys and Girls Club. Jamie Gobin was required to pick up A.G. by 6:00 PM.  Around 8:30 PM, the Club called Mr. Fryberg and his wife, Wendy, and informed them that A.G. was still at the Club and that Jamie Gobin could not be reached. The Club reported that their only option was to contact tribal child protection services. Mr. Fryberg drove to the Boys and Girls Club, picked up A.G. and took him to dinner at a local Taco Bell.  Mr. Fryberg and his wife tried several times to call Ms. Gobin who never answered.  After treating his son to dinner, Mr. Fryberg dropped A.G.at his aunt's house. Days later, Mr. Fryberg learned charges were filed against him for violating the protection order. Mr. Fryberg pled no contest to violating the protection order in lieu of hauling his son into court to undergo court proceedings and cross examination.

The underlying facts and circumstances of this offense had no ill motive or criminal intent. Mr. Fryberg purchased the firearms identified in the Superseding Indictment under a reasonable belief that he was allowed to possess firearms. Likewise, Mr. Fryberg successfully obtained a concealed pistol license after undergoing one of the most rigorous background checks that determined he was not prohibited under state or federal law from possessing firearms. Moreover, this case differs from other federal firearm cases because Mr. Fryberg's criminal activity was limited to mere possession and the vast majority of firearms he owned were used solely for hunting purposes. He certainly did not use any of the firearms during the commission of a criminal offense.

//

//

DEFENDANT'S SENTENCING MEMORANDUM - 6

### 3. The Need For The Sentence Imposed To Reflect The Seriousness Of The Offense, To Promote Respect For The Law, And To Provide Just Punishment For The Offense

Section 3553(a)(2)(A) requires the Court to consider "the need for the sentence imposed…to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." A sentence that is excessive in light of the seriousness of the offense promotes disrespect for the law and provides unjust punishment. The present case is about as mild as an unlawful possession by a prohibited person case be, keeping the MPHS tragedy as a completely separate issue here. In fact, there is no criminal activity connected to the firearms named in the Superseding Indictment for which Mr. Fryberg stood trial. His crime was that he allegedly lied on Government forms to procure firearms, the vast majority of which were hunting rifles. Given Mr. Fryberg was not a convicted felon in possession of a firearm, this case is arguably less serious than a conviction under §922(g)(1) or other federal firearm statutes. Even so, "[B]eing a felon in possession is a serious yet still modest crime…" U.S. v. Sanders, 197 F.3d 568, 572 (1st Cir. 1999). Again, Mr. Fryberg was not felon in possession of a firearm.

Thus, although the nature of the offense herein may be characterized as serious as it is a felony, it certainly is not as serious as many other felonies provided for under Federal law. The Government claims this case is very serious because "firearms are dangerous." However, the present case is labeled a "Class C" felony, below Class A and B felonies, which pertain to the most serious of felonies. *See* 18 U.S.C. 3581(b). Moreover, the facts distinguish this case from many cases prosecuted under 18 U.S.C. § 922(g)(8) because Mr. Fryberg possessed the firearms for lawful sporting purposes and did not unlawfully discharge or otherwise unlawfully use such firearms. Under USSG §2K2.1(b)(2) the Court could reduce Mr. Fryberg's base offense level to 6 if it was satisfied that Mr. Fryberg possessed all the firearms solely for lawful sporting purposes and did not unlawfully discharge or otherwise unlawfully use such firearms.

//

//

DEFENDANT'S SENTENCING MEMORANDUM - 7

LAW OFFICES OF JOHN HENRY BROWNE PS
108 SOUTH WASHINGTON STREET, SUITE 200
SEATTLE, WASHINGTON 98104
PHONE: (206) 388-0777 FAX: (206) 388-0780

**4.** **The Deterrent and Protective Purposes Warrant a Sentence Below the Advisory Range**

The Federal sentencing statute requires the Court to consider the "need for the sentence imposed…to afford adequate deterrence to criminal conduct" and the need to "protect the public from further crimes of the defendant." 18 U.S.C. §§ 2553(a)(2)(B) & (C). While many believe that the higher the sentence, the greater the effect in deterring others, the empirical research shows no relationship between sentence length and deterrence. The general research is that "deterrence works," in the sense that there is less crime with a criminal justice system then there would be without one. But the most pertinent question before this Honorable Court is whether any term of imprisonment, let alone a term of 27-33 months, is minimally necessary to serve this purpose of sentencing. And, in Mr. Fryberg's particular circumstances, the answer is a resounding "no."  With respect to Mr. Fryberg and *his* specific offense, there was no evidence whatsoever of other criminal activity connected to any of the firearms. No term of imprisonment will even come close to matching the extreme collateral consequences Mr. Fryberg has already suffered. Given these facts, there is no need for incarceration to deter future criminal conduct or to protect the public from further crimes of Mr. Fryberg. Suggesting otherwise would defy logic under this set of facts.

**5.** **The Rehabilitative Purpose of Sentencing Warrants a Sentence Below the Advisory Range**

Section 3553(a)(2)(D) requires the Court to consider "the need for the sentence imposed…to provide the defendant with needed educational training or vocational training, medical care, or other correctional treatment in the most effective manner." This purpose militates strongly in favor of a sentence below the advisory range. As a preliminary matter, Congress has explicitly directed that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). In other words, imprisoning someone neither achieves nor is a substitute for rehabilitation or achieving goals set for in § 3553(a)(2)(D). In the present case, Mr. Fryberg will benefit from mental health counseling, not prison. When the tribe fired Mr. Fryberg from his position as a building inspector, he lost his insurance and was unable

DEFENDANT'S SENTENCING MEMORANDUM - 8

to obtain the mental health treatment he needed.  Mr. Fryberg and his family will benefit from group counseling to promote healing within the family.  Removing Mr. Fryberg from his family will undeniably have detrimental consequences on both his own and his family's rehabilitation after unimaginable trauma. For these reasons, a sentence of probation is appropriate and justified under the facts of this case.

**6.  The Need to Avoid Unwarranted Sentence Disparities**

This case is remarkably similar to U.S. v. Lehman, 513 F.3d 805 (8th Cir. 2008). There, the 8th Circuit Court of Appeals affirmed the District Court's decision to grant a variance from the guidelines range, which was 37 to 46 months' imprisonment, by imposing only probation and not incarceration for a defendant convicted of being a felon in possession of a firearm.  Like this case, the facts in Lehman are heartbreaking. In September of 2005, Johnette Lehman received a phone call from her eight-year-old son who reported that Lehman's fourteen-year-old daughter was bleeding.  Lehman rushed home and found her daughter lying face down in a pool of blood with a pistol under her body. Lehman told investigators that she had taken the gun from her ex-boyfriend and kept in on a shelf in her bedroom. As a previously convicted felon, however, Lehman was prohibited from possessing the firearm and was subsequently charged and convicted under 18 U.S.C. 922(g)(1).

At sentencing the district court correctly calculated the advisory sentencing guidelines range, which provided for a sentencing range of 37 to 46 months' imprisonment before any departure or variance. Id. at 806. The district court imposed a sentence of five years' probation with six months of community confinement as a condition of probation.  The district court justified its deviation from the advisory guidelines range as a "variance" based on § 3553(a), without regard to any guidelines-based departure that might also have been warranted. Id. at 807.

The district court emphasized that Lehman was "not on trial for the death of her daughter," and found that the evidence regarding her daughter "clearly" took the case "outside the heartland of cases." Id. at 807. Moreover, the district court noted that despite other family members offering to care for Lehman's eight-year-old son, the child likely would "decompensate emotionally," and suffer a setback in his overall development, if the mother were removed from

DEFENDANT'S SENTENCING MEMORANDUM - 9

his life. Id. Significantly, the district court stated that, "the one thing that guides me more than ever is I do not want this young boy to suffer any more." Id. The court believed this was "an extraordinary, exceptional situation and not by any stretch of the imagination is it a simple felon in possession case." Id. Reviewing the § 3553(a)(2) factors, the court found that incarceration was not a necessary punishment. The court stated, "Does she need prison time to have the appropriate punishment? I just can't see where that serves any purpose for additional punishment. The loss the daughter certainly provided punishment." Id.

In the present case, justice is not served by removing Mr. Fryberg from his already fragile and emotionally crippled children and family. Mr. Fryberg is the backbone of his family; removing him would undeniably cause further irreparable damage to the family structure. His family, especially his son Julian, have suffered enough. As discussed in the Presentence Report, Mr. Fryberg's son, Julian, was inseparable from his older brother Jaylen.  The two were close in age, slept in the same room and spent every waking moment together. Both wrestled for their school teams (Mr. Fryberg was the assistant coach) and were very often training partners. PSR ¶ 47. After the shooting and his brother's suicide, Julian did not go back to school in Marysville and, instead, transferred school districts to receive much needed professional mental health counseling. PSR ¶ 47.  While laboring over its decision to impose a fair an appropriate sentence for Mr. Fryberg, this Court should consider the extreme collateral consequences and exceptional circumstances presented by this case. Sending Mr. Fryberg to prison would have an extremely harsh effect on innocent family members who desperately need and rely on Mr. Fryberg.

**7.  The Aggregation of the Above-Referenced Factors & Deprivation of Treaty Rights**

The Court may grant a downward departure or variance based on an aggregation of factors each of which may be individually insufficient to justify a departure or variance. In the case of Mr. Fryberg, the cumulative factors are his tragic personal history including the loss of his son; the need promote healing within his own family (USSG §5H1.6); and the devastating effect this conviction has on Mr. Fryberg's Native American Treaty Rights.  With respect to his Treaty Rights, Mr. Fryberg will no longer be allowed to possess firearms which will bar him from ceremonial hunting practices and passing down hunting traditions to his son and

DEFENDANT'S SENTENCING MEMORANDUM - 10

grandchildren. In the Native American culture, there is no greater penalty than relinquishing your ability to hunt and live off the land.

The guidelines explicitly acknowledge that a combination or aggregation of factors could distinguish a case from the "heartland" and warrant a downward departure in exceptional cases. See, USSG §5K2.0. Here, as discussed in greater detail above, there exist more than sufficient extraordinary factors to take this case out of the heartland of similar cases. The facts and circumstances of this case provide solid reasons for the Court to impose a sentence that is below or "in variance" to the advisory guideline range.

## VI.    OBJECTION TO "VICTIM IMPACT" STATEMENTS

Mr. Fryberg objects to any tribal member or member of the general public seeking to address the Court as a "crime victim" at sentencing. Federal Rule of Criminal Procedure 32(i)(4)(B) states, "Before imposing sentence, the court must address any victim of the crime who is present at sentencing and must permit the victim to be reasonably heard." This rule was amended to incorporate or implement provisions of the Crime Victim Rights Act ("CVRA") under the purview of 18 U.S.C. § 3771. However, in order to be reasonably heard at sentencing, the person seeking to address the Court must be a recognized "crime victim," which is defined by 18 U.S.C. § 3771(e)(2) as "any person directly or proximately harmed as a result of the commission of a federal offense." No such person is present in this case and restitution does not apply.

Here, defense counsel anticipates the Government will attempt to offer testimony from tribal members and/or members of the general public seeking to address the Court as victims of the Marysville-Pilchuck High School (MPHS) shooting. This Court is an inappropriate forum to air such grievances. Curiously, in its' Sentencing Memorandum, the Government "recognizes that FRYBERG is not being sentenced for the actions of his son," yet "anticipates several community members being present at sentencing, and they may request to address the Court at the time of sentencing." Defense counsel is uncertain whether the Government is endorsing community members who seek to address the court.  Regardless, the Defense objects to any

DEFENDANT'S SENTENCING MEMORANDUM - 11

LAW OFFICES OF JOHN HENRY BROWNE PS
108 SOUTH WASHINGTON STREET, SUITE 200
SEATTLE, WASHINGTON 98104
PHONE: (206) 388-0777 FAX: (206) 388-0780

written submissions along with any person seeking to address the Court without a prior evidentiary hearing to determine whether each person is actually a crime victim as defined by 18 U.S.C. § 3771(e)(2). Defense counsel is sympathetic to the fact that Jaylen Fryberg's actions on October 24, 2014 had a tremendous effect on the community. However, Mr. Fryberg is not responsible for the unforeseeable actions of his son. As such, victims of the MPHS tragedy, while certainly victims, are not "crime victims" under 18 U.S.C. § 3771(e)(2) with respect to this particular defendant or his specific offense of conviction under Federal law. Any statements offered on behalf of the Government at sentencing would violate Mr. Fryberg's Due Process rights as such testimony would be purely emotional, unrelated to the offense for which Mr. Fryberg stood trial.

## VII.   CONCLUSION

This is an exceptional case with extraordinary circumstances that warrants a sentence below or "in variance" with the advisory guidelines range. The collateral consequences Mr. Fryberg has endured could be no greater nor more extreme. For the reasons stated herein, Mr. Fryberg respectfully asks this Honorable Court impose a sentence of two years' probation with no term of imprisonment as certainly sufficient but not greater than necessary to achieve the goals of sentencing under 18 U.S.C. 3553(a).

Respectfully submitted this 5th day of January, 2016.

*s/ Michael T. Lee*
MICHAEL T. LEE, WSBA 44192
JOHN HENRY BROWNE, WSBA 4677
Attorneys for Raymond Lee Fryberg
108 South Washington Street, Suite 200
Seattle, Washington 98104
Ph: 206.388.0777 Fax: 206.388.0780
michael@jhblawyer.com
johnhenry@jhblawyer.com

DEFENDANT'S SENTENCING MEMORANDUM - 12

CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys of record for the Government.

*s/ Michael T. Lee*
MICHAEL T. LEE, WSBA 44192
Attorney for Raymond Lee Fryberg
108 South Washington Street, Suite 200
Seattle, Washington 98104
Ph: 206.388.0777 Fax: 206.388.0780
michael@jhblawyer.com

DEFENDANT'S SENTENCING MEMORANDUM - 13